# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 3:07-00221 |
| ) | Judge Trauger |
| HAROLD STAFFORD ) | |

## MEMORANDUM and ORDER

The defendant has filed a Motion to *Voir Dire* Juror (Docket No. 119), to which the government has responded in opposition (Docket No. 122). The motion is **DENIED**.

Juror Number 9 called Byron Jones, the lead prosecutor in this case, on February 4, 2009, after the verdict had been returned and the jury had been discharged. He wished to ask Mr. Jones something about the case. Mr. Jones promptly reported this contact to defense counsel and the court's courtroom deputy, informed Juror Number 9 that he would not speak with him about the case and, at the juror's request, furnished him with the date for the sentencing of the defendant.

Juror Number 9 was the long-term court officer for a state court trial judge, who served in the Davidson County, Tennessee courthouse for many years and tried both criminal and civil cases. During *voir dire*, Juror Number 9 revealed that he knew prosecutor Jones from a trial in which Mr. Jones had participated in the early 90's in the court where Juror Number 9 served as the court officer. He also revealed that he knew the defense attorneys but not by name. The court revealed that it knew Juror Number 9 from long ago, when the court appeared as a lawyer in the trial courts of Davidson County. Juror Number 9 was questioned as to whether or not he could put these past acquaintances aside and be fair to both sides in the case, and he affirmed

1

that he could. Neither side challenged Juror Number 9 for cause nor exercised a peremptory challenge to unseat him from the eventual jury. In fact, it is the court's memory that neither side asked additional questions of Juror Number 9 when given the opportunity to do so during their own *voir dire* of the potential jury panel.

It is not unusual that a court officer who has sat through probably hundreds of trials would wish to discuss the case with a lawyer whom he knew after the jury had finished its deliberations and returned its verdict. Nothing in Mr. Jones' exchanges with Juror Number 9 related in his filing (Docket No. 122) indicates in any way that "extraneous prejudicial information was improperly brought to the jury's attention," "any outside influence was improperly brought to bear upon any juror" or "there was a mistake in entering the verdict onto the verdict form," the only grounds on which the court might order an inquiry concerning the verdict under Rule 606(b), FED. R. OF EVID. This rule "is designed to prohibit testimony on matters that take place during deliberations, the effect of anything on the jurors' minds or emotions, and the mental process of any juror." *United States v. Logan,* 250 F.3d 350, 379 (6th Cir. 2001). The Sixth Circuit has taken an extremely strict view of what constitutes grounds for an inquiry of a juror concerning his or her verdict and whether any alleged misconduct justifies the setting aside of a verdict. *See United States v. Kelley*, 461 F.3d 817 (6th Cir. 2006); *United States v. Sherrill*, 388 F.3d 535 (6th Cir. 2004). "Post-trial jury scrutiny is disfavored because of its potential to undermine 'full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of lay people.'" *United States v. Kelley*, 461 F.3d at 831 (quoting *Tanner v. United States*, 483 U.S. 107, 120-21 (1987).

Strong policy considerations dictate that the defendant's motion containing basically no grounds whatsoever justifying a questioning of Juror Number 9 be denied.

It is so **ORDERED**.

ENTER this 17th day of February 2009.

_____
ALETA A. TRAUGER
U.S. District Judge