IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 3:07-00221-01 |
| v. | ) | Judge Trauger |
| | ) | |
| HAROLD STAFFORD | ) | |

### RESPONSE OF THE UNITED STATES
### TO DEFENDANT HAROLD STAFFORD'S POSITION
### WITH RESPECT TO SENTENCING FACTORS

Comes now the United States of America by and through the United States Attorney for the Middle District of Tennessee and responds to the position with respect to sentencing factors filed by defendant Harold Stafford.

**1. Obstruction of Justice Enhancement.**

Defendant Harold Stafford objects to the two point adjustment for obstruction of justice recommended in paragraphs 110 and 123 of the presentence report. The presentence report correctly includes this two point adjustment.

Pursuant to U.S.S.G. § 3C1.1, an adjustment for Obstruction of Justice applies if the defendant willfully attempted to obstruct or impede the administration of justice with respect to the investigation of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction or any relevant conduct.

In this case, straw buyer U.N. testified at trial that defendant Stafford visited him after this investigation became known to defendant Stafford and that defendant Stafford told straw buyer U.N. not to speak to any agents who contacted him. Defendant Stafford does not deny that he advised straw buyer U.N. not to talk to the agents, but insists that he was merely advising straw buyer U.N. of his constitutional rights.

Where the inducer's motive in advising a co-conspirator to remain silent is to impede the investigation against him, rather than to give purely altruistic advice, he is obstructing justice. *See*, [United States v. Hall, 434 F.3d 42, 61 (1st Cir. 2006)](#) (district court reasonably concluded that defendant was trying to silence codefendant by promising him that he would not disclose codefendant's criminal conduct if codefendant refused to testify against him, even though defendant argued that he merely meant to advise codefendant of his right to invoke his Fifth Amendment privilege); [United States v. McManus, 496 F.3d 846, 850 (8th Cir. 2007)](#) (defendant's advice to daughter to keep silent was not to protect daughter, but to conceal defendant's involvement in the illegal activity and qualified as an attempt to obstruct or impede the administration of justice); [United States v. Peterson, 385 F.3d 127, 142 (2nd. 2004)](#) (where the inducer's motive in advising a co-conspirator to remain silent is to impede the investigation against him, rather than to give purely altruistic advice, he is obstructing justice).

In the context of this case, it is evident that defendant Stafford instructed straw buyer U.N. not to talk to agents to protect the interests of defendant Stafford, not out of concern for the constitutional rights of U.N. It was in the interest of U.N. to cooperate with the investigation, as he did despite the attempts by defendant Stafford to discourage that cooperation. Defendant Stafford persuaded U.N. to purchase six luxury homes with 100% financing as though those homes would

2

be owner-occupied. Defendant Stafford promised to find renters for the six homes purchased by U.N. and to make the mortgage payments on those six homes. Defendant Stafford defaulted on those mortgage payments, thus impairing U.N.'s credit history. U.N. provided money to defendant Stafford to help cover mortgage payments. Defendant Stafford was at no time acting to protect interests of U.N. or any of the other straw buyers. Defendant Stafford was acting in his own interests. It was in defendant Stafford's interests that U.N. not tell law enforcement agents that defendant Stafford was the person who recruited U.N. to participate in this scheme and who provided to U.N. the false tax returns for U.N. that were submitted to the Bank of Nashville. It was not in the interest of U.N. to conceal his involvement in this scheme from law enforcement when the involvement of U.N. already was evidence from the false mortgage documents that he had signed.

For these reasons, the presentence report is correct that a two point adjustment for obstruction of justice should apply to defendant Stafford.


**2. Sophisticated Means.**

Defendant Stafford also objects to the two point increase applied in paragraph 118 of the presentence report because the offense involved sophisticated means. The presentence report correctly includes this two point increase.

Pursuant to [U.S.S.G. § 2B1.1(b)(9)(C)](#), two offense levels are added if the offense involved sophisticated means. Application Note 8(C) to Section 2B1.1 states that "'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." It further provides that, "[c]onduct such as hiding assets or transactions,

3

Case 3:07-cr-00221  Document 165  Filed 06/10/09  Page 3 of 14 PageID #: 578

or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means."

Several cases have applied this provision in the context of mortgage fraud schemes that are similar to the facts of this case. *United States v. Septon*, 557 F.3d 934, 935-36, 937 (8th Cir. 2009) (sophisticated means applied to defendant who directed his employees to submit fraudulent loan applications and other documents to banks and mortgage lending companies concealing the fact that defendant was providing "bridge loans" to buyers for their down payments, that defendant used his associated businesses to act as sham employers for borrowers in order to falsely verify and substantiate their sources of income, that loan applications falsely inflated borrowers' assets and income, falsely described borrowers' employment, and contained forged signatures as well as falsified or altered tax returns, pay stubs, gift letters, bank statements, and bank notes); *United States v. Dinnall*, 2009 WL 405365 (11th Cir. 2009) (sophisticated means applied to defendant who created and submitted to mortgage lenders fraudulent employment and earnings statements in eleven loan applications for borrowers, including fraudulent forms to verify employment, W-2 statements, payroll stubs, bank account statements, and other information required by lenders to review the creditworthiness of the borrowers, and who listed the phone numbers of friends and relatives on the employment records and recruited those individuals to verify the false information if contacted by an underwriter, and who used straw buyers to conceal the poor credit rating or lack of income of the borrowers); *United States v. Cross*, 273 Fed.Appx. 557, 2008 WL 1723325 (7th Cir. 2008) (sophisticated means applied where the defendant and others perpetrated a mortgage loan fraud involving more than six million dollars in loans, the fraud involved 35 mortgage loans on 17 residential properties in the names of 17 different "straw buyers," the loans were provided by 23

4

banks and residential lenders, and the straw buyers were paid $5,000 for the use of their names and social security numbers, and some were required to sign mortgage loan documents); *United States v. Wright*, 496 F.3d 371, 377-78 (5th Cir. 2007) (sophisticated means applied to defendant in mortgage fraud scheme who used his own funds to purchase cashier's checks for closing costs in the names of the loan applicants, made copies of the same checks which were forwarded to the lenders, then deposited the same cashier's checks into his account); *United States v. Small*, 210 Fed.Appx. 776, 2006 WL 3720253 (10th Cir. 2006) (defendant's conduct in mortgage fraud scheme, which employed such devices as shell corporations, false financial statements and fictitious persons, plainly falls within the definition of "sophisticated."); *United States v. Edelmann,* 458 F.3d 791, 815-16 (8th Cir. 2006) (sophisticated means applied to defendant in mortgage fraud and financial fraud scheme who created and used numerous false documents, including multiple years of federal tax returns, supporting federal tax documents, such as W-2 and 1099 forms, bank statements (created from whole cloth), articles of incorporation from the Arkansas Secretary of State, profit and loss statements, and a series of bank letters); *United States v. Amico*, 416 F.3d 163, 169 (2nd Cir. 2005) (sophisticated means applied to defendant in mortgage fraud scheme that included the creation of false bank documents; the solicitation and creation of false appraisals; the creation of false blueprints; submission of false blueprints to town officials in order to inflate the assessment of comparable home values; collusion with the attorney representing many of the purchasers at closing; and other tactics designed to conceal the scheme); *United States v. Moncrief,* 133 Fed.Appx. 924, 2004 WL 2434841 (5th Cir. 2004), *certiorari granted, judgment vacated by Moncrief v. United States,* 544 U.S. 1029, 125 S.Ct. 2273, 161 L.Ed.2d 1051 (2005) (sophisticated means was employed in mortgage fraud scheme).

In the case before this Court, defendants Black and Hathcock testified that they acted at the direction of defendant Stafford when they submitted loan applications in the names of seven straw buyers to finance the purchase of twenty-two residences. Defendant Stafford recruited these seven straw buyers, assuring them that he would find renters for these residences and make the mortgage payments. Defendant Stafford directed the straw buyers to defendants Black and Hathcock to arrange mortgage financing for these twenty-two homes. Defendant Stafford received approximately $1.2 million in payments from the sellers of these twenty-two residences after these fraudulent loans closed. Defendants Black and Hathcock, acting on defendant Stafford's instructions, submitted loan applications that falsely represented that these straw buyers would be the owner-occupants of these residences. Defendants Black, Hathcock, and Stafford each knew that loans to finance 100% of the purchase price for each residence would not be approved by the lenders to whom these applications were submitted unless the residences would be owner-occupied. Defendants Black and Hathcock intentionally sought financing for multiple real estate purchases by each straw buyer before previous real estate purchases could appear on the credit reports for that straw buyer to conceal this fraudulent scheme from the lenders. This was a fact that defendant Stafford acknowledged in his recorded meeting with IRS undercover agent Mark Mire. Defendants Black and Hathcock also were careful to send loan applications for each real estate purchase by each straw buyer to a different lender to further conceal this fraudulent scheme from the lenders. Defendant Black and Hathcock also removed addenda from real estate purchase contracts to conceal from lenders that the purchase prices of these residences had been inflated to cover the payments made by the sellers to defendant Stafford. Defendants Black and Hathcock also falsely stated the income, employment history and rental history of the straw buyers to satisfy the criteria of various loan programs. Defendant Stafford

6

provided false tax returns to straw buyer U.N. for submission to Mr. Black and ultimately to the Bank of Nashville. This scheme used straw buyers to purchase residences for investment purposes to conceal from lenders the true nature of these transactions and to prevent lenders from recovering their losses from defendant Stafford who was the person who controlled these properties. Therefore, this scheme involved sophisticated means.

Defendant Stafford contends that the two points for sophisticated means should not be applied to him because the actions that involved sophisticated means were taken by parties other than himself. However, Section 1B1.3(a)(1)(B) of the Guidelines provides that unless otherwise specified, specific offense characteristics shall be determined, in the case of jointly undertaken criminal activity, on the basis of all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity. In this case, all of the actions of defendants Hathcock and Black in furtherance of this scheme were reasonably foreseeable to defendant Stafford. Defendant Stafford could foresee from his experience as a mortgage broker, from his knowledge of the straw buyers that he recruited, from his knowledge of the expense of the twenty-two homes that were purchased in this scheme, and from the arrangements that he made to be paid outside of closing by the builders and sellers of these homes, that defendants Hathcock and Black were employing sophisticated means to defraud these mortgage lenders.

Defendant Stafford cites one case in support of this position, *United States v. Kraig*, 99 F. 3d 1361, 1371 (6th Cir. 1996). *Kraig* was a tax evasion case and the sentence was determined using Section 2T1.1 of the Sentencing Guidelines, which also includes "sophisticated means" as a specific offense characteristic. In *Kraig*, the Sixth Circuit observed that a defendant involved in a complex or repetitive tax conspiracy is not automatically given a sophisticated means enhancement if his or

7

her own personal involvement did not constitute sophisticated means. However, in *Kraig*, the Sixth Circuit affirmed the district court's application of the sophisticated means adjustment to a defendant/lawyer who was involved in the tax evasion scheme, even though the defendant/lawyer in *Kraig* had not personally opened the Swiss bank accounts or set up the shell corporations that made the evasion scheme sophisticated in that case.

The Sixth Circuit has recognized that the specific offense characteristic for sophisticated means applies to a defendant when the evidence demonstrates that the defendant's personal involvement in the scheme constituted sophisticated means. *United States v. Butler*, 297 F.3d 505, 516-17 (6th Cir. 2002). In *Butler*, the defendant helped set up the shell companies, was president of another entity involved in the tax evasion scheme, and although he may not have set up the various different bank accounts or post office boxes, he used them in his day-to-day business and was not just occasionally involved in the scheme. He also used an alias and tried to mislead the IRS. Because of his personal involvement in the sophisticated means, this offense characteristic was properly applied to him.

In the case before this Court, defendant Stafford was personally involved in the sophisticated means employed in the execution of this scheme. Defendant Stafford was a mortgage broker with a knowledge of the mortgage brokerage business as extensive as that of defendants Hathcock and Black. It was evident from the recorded meeting between defendant Stafford and IRS undercover agent Mark Mire that defendant Stafford was the individual in charge of this scheme. Defendant Stafford recruited the seven straw buyers to purchase these twenty-two residences. These straw buyers functioned as "fictitious entities" to deceive lenders about the purpose of these home purchases and about the identity of the person who really controlled these properties. Defendant

8

Stafford instructed defendants Hathcock and Black about loan programs to which they should submit the loan applications. Defendant Stafford instructed defendants Hathcock and Black to submit the loan applications as though the properties would be owner-occupied. Defendant Stafford knew that incomes of the straw buyers was being inflated and that the multiple home purchases by straw buyers were being concealed from the lenders. Therefore, Defendant Stafford personally used sophisticated means to accomplish his fraudulent scheme.

For these reasons, a two point enhancement because the offense involved sophisticated means is correct.

**3. Role in the Offense.**

Defendant Stafford also objects to the four point adjustment in paragraph 122 of the presentence report for his role as a leader in the commission of this offense. The presentence report also correctly includes this four point adjustment.

Pursuant to U.S.S.G. § 3B1.1(a), a four level adjustment for Role in the Offense applies if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.

Defendant Stafford contends that there was no leader or organizer in this criminal enterprise. On the contrary, it was defendant Stafford who received approximately $1.2 million from this fraudulent scheme. It was defendant Stafford who recruited the seven straw buyers, identified the twenty-two properties to be purchased, negotiated the terms of sale with the sellers of the twenty-two properties, approached defendants Black and Hathcock with loan applications for the straw buyers who purchased the initial properties with a request that they arrange the financing for these

9

properties, instructed defendants Black and Hathcock concerning which loan programs to use and how to prepare the loan applications to reflect that the properties would be owner-occupied, collected the agreed upon payments from the sellers after closing, paid the straw buyers for their participation, made the initial mortgage payments on some of the properties purchased, occupied the most expensive of the twenty-two properties as his personal residence, and developed an infomercial to promote his real estate investment scheme to others. Defendant Stafford was the leader of this fraudulent scheme. Without defendant Stafford's leadership, this fraudulent scheme would not have been executed.

The Sixth Circuit has recognized that such extensive manipulation of straw buyers warrants an enhancement for Role in the Offense. *United States v. Paul*, 57 Fed. Appx. 597, 611-12 (6th Cir. 2003). In *Paul*, the defendant defaulted on his mortgage payments and the bank began foreclosure proceedings. During the mortgage redemption period, he arranged for a friend to purchase the property and rent it back to him. This friend, guided by the defendant, submitted loan application materials, including false tax returns, that misrepresented his income, assets, and profession. The defendant subsequently provided this friend with checks to cover the mortgage payments. The district court found that the defendant came up with the idea, planned the offense, recruited others, directed them to commit the crime, and exercised considerable control over his friend, in particular. Moreover, only the defendant gained financially from the fraudulent transaction. The appellate court upheld the (two-level) enhancement for Role in the Offense, finding evidence that the defendant had "masterminded" the straw sale, recruited and manipulated the other participants, and profited vastly more than anyone else.

The Sixth Circuit has also found this enhancement appropriate for mortgage professionals who recruit straw buyers in fraudulent schemes. United States v. Cook, 55 Fed. Appx. 341, 342-43 (6th Cir. 2003). In *Cook*, the defendant participated in a "property flipping scheme" in which one straw buyer would purchase a property at the listed price and resell it to a "borrower/buyer" who would subsequently obtain a mortgage based on an artificially inflated sales prices. This scheme involved some 200 properties and resulted in nearly $3 million in losses to lenders. The defendant in *Cook* personally recruited two initial straw buyers and a subsequent borrower/buyer in the course of personally arranging three flip transactions. The district court found that Cook's role in the scheme warranted a two-level enhancement under U.S.S.G. § 3B1.1(c). The appellate court affirmed the judgment while noting that she "clearly" organized the three transactions.

Section 3B1.1(a) provides for a four level enhancement to the offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." At a minimum, the defendant must have been the leader or organizer of at least one participant. See U.S.S.G. § 3B1.1, comment. (n.2). Participants include those persons "who were (i) aware of the criminal objective, and (ii) knowingly offered their assistance ." . United States v. Anthony, 280 F.3d 694, 699 (6th Cir. 2002). A criminal activity is otherwise extensive "when the combination of knowing participants and non-participants in the offense is the functional equivalent of an activity involving five criminally responsible participants." *Id.* at 699. To determine functional equivalence, a sentencing court should consider: (i) the number of knowing participants; (ii) the number of unknowing participants whose activities were organized or led by the defendant with specific criminal intent; and (iii) the extent to which the services of the unknowing participants were peculiar and necessary to the criminal scheme. *Id.* at 701 (quoting

11

*United States v. Carrozzella*, 105 F.3d 796, 805 (2d Cir.1997), *abrogated in part on other grounds*, *United States v. Kennedy*, 233 F.3d 157, 160-61 (2d Cir.2000).

Defendant Stafford contends that there were not five or more criminally culpable participants in this fraudulent scheme. However, defendant Stafford has not objected to the conclusion that the criminal activity *was otherwise extensive*. In this case, there clearly were three criminally culpable participants. Defendant Stafford led Mr. Hathcock and Mr. Black into this scheme with him. There also were a number of unknowing participants whose activities were organized or led by the defendant with specific criminal intent. All of the seven straw buyers were recruited to participate in this scheme by defendant Stafford. Mr. Stafford also was assisted in recruiting some of the straw buyers by Marquis Taylor. Mr. Stafford also solicited approximately thirteen individual builders and home sellers to pay him proceeds from these real estate transactions outside of the closings. This scheme also required the assistance of the four closing agents and a real estate appraiser. The services of these numerous unknowing participants were peculiar and necessary to the criminal scheme. The scheme could not have been accomplished without them. Clearly, this scheme was "otherwise extensive" as contemplated by § 3B1.1(a) of the Guidelines.

Conclusion

For these reasons, the offense level recommended by the presentence report is correct.

> Respectfully submitted,
>
> EDWARD M. YARBROUGH
> United States Attorney for the
> Middle District of Tennessee
>
>
> BY <u>s/ Byron M. Jones</u>
> Byron M. Jones
> Assistant U. S. Attorney
> ll0 9th Avenue South, A96l
> Nashville, Tennessee  37203
> Phone:  6l5-736-5l5l

13

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and exact copy of the foregoing document has been served by via the electronic case filing system upon:

Ms. Fannie Harris
1507 Sixteenth Avenue South
Nashville, TN 37212

Mr. William Stover
800 Broadway
Second Floor
Nashville, TN 37203

this 10th day of June, 2009.

                                                          s/ Byron M. Jones
                                                          BYRON M. JONES